### No. 9502.

ROBERT R. BARROW ET AL. VS. MRS. MARGARET WILSON ET AL.

In a petitory action met by the defense of the prescription of ten years, the main legal discussion involves the question of the alleged just title, the good faith and the length of time of the defendant's possession of the property in controversy. The legality or validity of plaintiff's title is a question of secondary consideration, which comes up in case only that defendant's plea of prescription should not be found good.

A just title is one which in form and intent is translative of property, which the purchaser acquires from one whom he believes in good faith to be the true owner.

If the possession begins in good faith, the right of pleading the prescription of ten years is not affected or impaired by the fact that the possession may subsequently have been in bad faith.

Irregularities and defects in a tax deed, which is *prima facie* valid, and which are not apparent or stamped on the face of the deed, are cured by the prescription of ten years.

Prescription is suspended by the minority of the parties against whom it is pleaded. Hence, if it appears from the record that the party to be affected by the plea of prescription was a minor a short time before the time at which it must have begun to run, and if the record does not show the precise time at which he obtained his majority, the cause will be remanded for trial of that issue.

A PPEAL from the Twenty-fourth District Court, Parish of Plaquemines. *Livaudais*, J.

---

*E. Howard McCaleb* for Plaintiffs and Appellants:

I.

1. Just title, good faith and actual possession are all essential to support the prescription of ten years. R. C. C. 3478, 3479, 3480, 3481, 3482, 3483, 3484.

2. The Act of Congress of March 2, 1849, donating swamp lands to Louisiana, did not convey title "to lands claimed or held by individuals." Sec. 2, Acts Cong., 1849.

3. A United States patent is the superior and conclusive evidence of legal title; and where plaintiffs in a petitory action claim under a patent from the United States issued in 1839,

and defendants claim under a State patent issued in 1869, for the same land and ten years prescription, plaintiffs should recover the land. Defendants' title not being valid, cannot be the basis of the ten years prescription. "A State has no power to declare any title valid against a title held under a patent granted by the United States. A claim based on a patent obtained from the State must yield to a patent from the Government of the United States." 5 A. 75; 15 How. 433; 13 Pet. 436; 13 Pet. 498. "Valid" means good in law. Bouvier's Law Dic., verbo *Valid.*

4. The registers of the United States land offices cannot attest or certify the contents of documents in their possession. 3 R. 15. Such certificates are no evidence at all. 6 A. 683; 13 A. 357.

5. Defendant who, when sued for the price of land by his vendor, alleged that the latter was without title, that he feared eviction and claimed to withhold the price on that account, cannot in a subsequent suit brought by the true owner to recover the property claim to be a possessor in good faith and thus contradict his judicial admission to the contrary made nine years before, at a time not suspicious. Rev. C. C. 2291.

6. In a conflict of titles, the eldest must prevail. *Qui prior est tempore. potior est jure.*

7. When defendant's title is not traced to a sovereign grant possession in good faith, under successive purchases from private vendors for more than ten years, will not constitute a title by prescription against one who claims under a patent from the United States. 12 A. 151. The burden of proof rests with the party pleading prescription to show affirmatively a state of facts which will sustain the plea. *Idem.*

8. Where plaintiffs have shown that the property was vacant, no one living upon it, and it was occupied only as a pasture for cattle seven years prior to the institution of the suit, the plea of prescription of ten years will not be sustained.

### II.

*a.* Where the pleadings and evidence show that the parties trace their titles to the same source, neither can attack the title of their common author. 2 L. 213; 8 L. 239; 1 R. 369; 5 A. 677; 10 A. 327

*b.* Where defendant relies on a tax sale as his title, plaintiff has the right to show its illegality. 33 A. 438; 34 A. 1273.

*c.* Where the land stood recorded in the name of H. L. Hunley, who died (and whose succession was opened) in 1863, leaving his sister, Volumnia W. Barrow, his universal legatee, and she died in 1868, bequeathing her estate to plaintiffs, then minors, and while her succession was being administered upon, an assessment, advertisements and tax deed made in 1871, in the name of "Est of H. L. Handley," will not convey a just title to the property. The misnomer is fatal 10 A. 771; 12 A. 748; 14 A. 209; 15 A. 15; 33 A, 520, 912; 34 A. 107. 407; 35 A. 952; 36 A. 985.

*d.* Where the property was sold for a parish tax exceeding the limit fixed by law (Sec. 7, Act 42 of 1871), the sale is illegal. 34 A. 123; Blackwell, 160; Cooley on Taxation, 295; Burroughs on Taxation, 301. The police jury were without power to assess or tax collector to collect taxes in excess of the limitation fixed by law. 29 A. 1; 28 A. 538, 30 A. 1085; 32 A. 401.

*e.* Where no curator *ad hoc* was appointed to represent a non-resident in tax proceedings under Act 42 of 1871 (sec. 60), and the land was not divided or sold in tracts of from ten to fifty acres (Sec. 62, Act 42 of 1871; Art. 139, Constitution of 1868), the sale is an absolute nullity. 24 A. 454. 23 A. 231; 28 A. 354; 33 A. 873.

*f.* A description of land on the assessment roll, in the tax collector's advertisement of sale and in the tax deed, as "160 acres, bounded above by L. Edgcomb and below by A. Cox," does not sufficiently identify and will not convey title to land known, designated and described in acts of sale registered in conveyance office as "Lot or section No. 5, in township 18 of range 16, E, containing 159 acres." The description is void for uncer-

tainty, and cannot be the basis for any judgment.  Manning, Unr. Cas. p. 56; 1 R. 20 10 A. 327, 672; 30 A. 295.

g.  The Auditor's deed is necessary to complete a tax sale under Sec. 62 of Act 42 of 1871.

h.  Where a tax deed carries its death wounds on its face (1) not designating or describing the property; or (2) giving the name of the true owner; or (3) stating the taxes for which the land was sold, whether State or parish, and how much; or (4) the years for which they were due and unpaid—the prescription of ten years will not cure such radical defects, and the decision in Giddens vs. Mobley (37 A. 417) does not apply.

i.  An unrecorded sale cannot support prescription.  11 L. 346; 11 R. 56; 2 A. 787, 868.

j.  Defendants in bad faith and without title cannot recover for improvements, and are responsible for revenues.  R. C. C. 3451, 3452, 3453, 3454; 1 Woods, 57; 35 A 977.  The fruits to be restored by the possessor *mala fides* are what the premises are reasonably worth, with interest to the time of trial.  15 Wal. 624; 33 A. 1178.

## F. C. Zacharie for Defendants and Appellees:

The prescription of ten years possession under a just title is pleadable, and must be sustained against a United States patent issued prior thereto.  12 A. 151.  The United States laws and courts do not disregard but sustain the statutes of limitations of the States.  2 Bk. 599; 5 Pet. 402; 5 Peters, 457; 3 Pet. 270; 13 Pet. 45; 7 How, 779, 780, 783; 17 Wall. 600; 2 Bank Rep. 318; 12 Bank Rep. 426, 540; Hemp. 325; Abb. Adm. 430; 2 Wood and M. 470; 3 Wood and M. 402; 9 Blatclif, 127; 1 Biss, 186; 1 Story, 102.

"It is sufficient if the possession has commenced in good faith; and if the possession should afterwards be held in bad faith, that shall not prevent the prescription."  C. C. Art. 3481; 3 A. 8; 12 A. 242.

Bad faith is not presumed.  C. C. 3481; 12 A. 242; 14 A. 362, 363.

An immaterial mistake in the spelling of the name of the owner of land sold for taxes will not vitiate the sale, if the land be definitely described.  Desty, p. 963; 3 A. 8; Bouvier's Dict. verb; 2 Idem, Sonans; Burroughs, 203; 37 N. H. 307; 14 A. 99, 580; Cooley on Taxation, 285; Desty, p. 555; 101 Ill. 645; 47 Cal. 501.

A slight variance in the quantity of the land sold from the true quantity owned by the delinquent, will not vitiate the sale.  Cooley on Taxation, p. 282; 9 Penn. St. 38.

A title not registered may be the basis of prescription.  11 A. 100; 8 A. 5; 4 R. 170; 6 A. 164; 11 A. 57; Guzman vs. Berryman, N. R. Op., Book No. 50.

"Every proprietor who, for a long time and without any just reason neglects his right, should be presumed to have entirely renounced and abandoned it."  Vattel's Law of Nations, B. 2, ch. 11.

·Defendants have possessed in good faith for more than ten years, under translative titles.  The plea of ten years prescription should be sustained.  R. C. C. Arts. 3479, 3451, 3452; 27 A. 598, Hall and Turner vs. Mooring; 4 R. 205, McCloskey vs. Webb; 14 A, 596, Roberts vs. Brown; 18 Howard, 52, 59, Wright vs. Mattison; Blackwell on Tax Titles, p. 671; 13 How. 472, Pillow vs. Roberts; 21 How. 340, Thomas vs. Lawson; 5 A. 380, Eldridge vs. Thibbetts; 34 A. 705, Wederstrandt vs. Freyhen; 35 A. 893, Ludeling vs. McGuire; 35 A. 1086, Hickman vs. Dawson.

Just title.  R C. C 3479, 3483, 3489, 3486, 3481, 3485, 496; Blackwell on Tax Titles, 649, 662, 666; Wood on Limitation of Actions, 528; 35 A. 492, Davidson vs. Houston; 15 La. 566, Divole vs. Choppin.

Of title valid in point of form.  7 O. S. 406, Carroll vs. Cabaret; 4 N. S. 224, Frique vs. Hopkins; 11 O. S. 715, Dufour vs. Camfranc.

Tax sales and judicial sales are assimilated.  33 A. 491, Shannon vs. Lane; 36 A. 392, Aymer vs. Bourgeois; C. P. 695; 3 A. 8, Leduf vs. Bailey.

Of the elements of judicial titles.  2 Rob. 468, Waldon vs. Caufield; 8 A. 138, Dade vs. Bouguville; 9 A. 522, Mithoff vs. Dewees; 13 A. 450, Hynson vs. Bailey; 6 N. S. 458, Thomp-

son vs. Chanveau; 5 A. 854, Davis vs. Wilcoxen; 8 La. 321, Poultney vs. Cevil; 34 A. 205, Roberts vs. Zansler.

An apparently valid assessment, an element of judicial title, sufficient for prescription. 8 La. 241, Bedford vs. Urquhart; 4 A. 69, New Orleans vs. Gottschalk; 10 La. 283, Reeves vs. Towles; 14 A. 598, Roberts vs. Brown; 6 N. S. 349, Nancarrow vs. Weathersby; 7 La. 50, Smith vs. Corcoran.  Antecedent to 1868.

Tax titles are *prima facie* valid.  Art. 118, Const. 1868; 30 A. 1235, Jurey & Gillis vs. Hugh Allison & Co; 25 A. 236, Coco vs. Thienman; 29 A. 115, Lannes vs. Workingman's Bank; 30 A. 960, O'Hearn vs. Hibernia Ins. Co; 31 A. 661, Renshaw, Cammack & Co. vs. Imboden; *Ib.* 840, N. O. Ass'n vs. Labranche; 35 A. 893, Ludeling vs. McGuire; Sec. 65, Art. 114, 1869; 35 A. 1086, Aickman vs. Dawson.

The want of recital in deed that a curator *ad hoc* was appointed, does not affect the plea of prescription.  Sec. 66, Act 114 of 1869; 35 A. 894, Ludeling vs. McGuire; 13 How. 472, Pillow vs. Roberts; 8 How. 56, Wright vs. Madison; 21 How. 340, Thomas vs. Lawson; 21 A. 661, Renshaw vs. Imboden; 33 A. 1043, Mulholland vs. Scott; 32 A. 912, Lague vs. Boogni; 21 A. 506, Woods vs. Lee; 14 A. 792, Louailten vs. Castille.

Of the possession necessary to plead prescription.  R. C. C. 2479, 3487; Secs. 4 and 8, Act 39 of 1871, 22 A. 470, Ellison Iler; 4 A. 60, Hayden vs. Nutt.  Plaintiff's petition alleges possession of defendants.  R. C. C. 3487, 3434; 11 La. 433, Baker vs. Towles.

Validity of tax title.  Sec. 2, of Act 101 of 1873, declares that judicial possession under tax title duly recorded, for two years, is an acquiescence in same and a waiver of all informalities in assessment and sale, and operates an estoppel against the former owner and authorizes sale by purchaser to any third person.

Of rents and revenues, and improvements and taxes.  R. C. C. 503, 3543; Henn. Dig. p. 1195; 14 A. 605, Roberts vs. Brown; 10 R. 178, Lazur vs. Generes; 34 A. 1163, Kibbee vs. Campbell; 34 A. 1086, Hickman vs. Dawson; 13 A. 494, Stanbrough vs. Wilson; 2 R. 137, Baldwin vs. Union Ins. Co; 2 A. 347, Beard vs. Morancy; 26 A. 588, Wilson vs. Benjamin; 18 A. 407, Howard vs. Zeigler; 27 A. 398, Dulfilho vs. Mayer; 34 A. 705, Wederstrandt vs. Freyhen; R. C. C. 503, 3453.

The opinion of the Court was delivered by

POCHÉ, J.   This is a petitory action involving the title to two separate tracts of land.

Plaintiffs claim the property under the rights of their deceased mother, who was the only heir at law of her predeceased brother, H. L. Hundley, the alleged former owner.

Defendants claim one of the tracts under a patent issued by the State of Louisiana in January, 1869; and the other tract under a tax sale made to their author in September, 1871.

Asserting both conveyances to have created a just title, and alleging possession in good faith for upwards of ten years, they pleaded that prescription.  That defense prevailed in the district court, and plaintiffs have appealed.

After a prolonged and a thorough examination of the record, and a mature consideration of the innumerable authorities relied upon by the respective counsel, discussed by them at great length in able and ex-

haustive briefs, we have reached the conclusion that there is no error in the judgment appealed from.

But in view of a very important question which has been discussed on appeal only, and on which the record does not contain sufficient or decisive evidence, we are unable to make a final disposition of the cause in our present decree, and we shall remand the case for trial on that question.

Under the pleadings as affected by the plea of prescription of ten years, the main legal discussion hinges upon the question of the alleged just title set up by the defendants as a basis of their plea.

I.

The first tract of land is shown to have been acquired by the defendants' author in 1869, under a patent issued by the State of Louisiana. Upon its face that muniment of title is transferable of the ownership of the property which it purports to convey, and the record contains no evidence to show that the purchaser had any reason to fear or suspect that the State of Louisiana was not the true owner of the land which he proposed to purchase and for which he gave valuable consideration.

These are the elements which our Code contemplates as the essential conditions of the good faith which forms the basis of a just title.  C. C. 3478, 3484.

We note in this connection the line of argument followed by plaintiffs' counsel throughout the whole case, and in which he strenuously, and we will add, successfully contends that in 1869 the legal title to this land was in plaintiffs' author.

It would be difficult to establish a more complete chain of title than the one which he has interwoven in defendants' path.  But under the issue which we are trying, we are not concerned with the legality of plaintiffs' title.  The issue is restricted and the discussion must be confined to the questions of the just title set up by the defendants and of their possession of the lands in controversy as the foundation of their plea of prescription.

Counsel's argument, although it is predicated on indisputable evidence, is answered by the textual provisions of our Code on this subject.  Article 3484 reads: "By the term just title, in cases of prescription, we do not understand that which the possessor may have derived from the true owner, for then no true prescription would be necessary, but a title which the possessor may have received from any person whom he honestly believed to be the real owner, provided the title were such as to transfer the ownership of the property."

On the question of good faith, plaintiffs submit the point that one of defendants' authors, Burton, who had purchased from Cox, resisted the payment of his notes representing part of the purchase price, on the ground, judicially alleged, that Cox's title was defective. From the record it appears that this contention arose in 1875, four years after his purchase from Cox, and two years after the latter's purchase from the State.

That argument is likewise answered by the text of the Code.

Article 3482 reads: "It is sufficient if the possession has commenced in good faith; and if the possession should have afterwards been held in bad faith, that shall not prevent the prescription."

Article 3481 reads: "Good faith is always presumed in matters of prescription, and he who alleges bad faith in the possessor must prove it."

These provisions of our law have been frequently expounded by this Court, and application has been frequently made of them in conformity with our present conclusions. Leduf vs. Bailey, 3 Ann. 8; McGovern vs. Laughlan, 12 Ann. 242.

It is therefore safe to conclude that the doubt of the validity of the title of Cox which Burton once entertained, and which was evidently removed, as it appears that he subsequently paid the very purchase notes in question, cannot affect the good faith of Cox at the time of his purchase, or the resulting good faith in the present possessors, both in their purchase and in their possession.

But on the question of possession, plaintiffs' counsel argues in this Court, that the defendants have not shown possession of the property for ten years, prior to the 16th of October, 1884, the date of the institution of this suit. One of the witnesses, who rented the property in 1878, says that at that time it was vacant, occupied for cattle only. But this does not exclude the possession which the law contemplates as resulting from an authentic sale of immovable property. C. C. 2479.

The lands in question are shown to have been low marshy lands, and to have been sold by the State as "swamp lands subject to tidal overflow." Doubtless the grazing of his cattle thereon, was all the possession which the then owner needed of the lands, and such possession, accompanied by the regular payment of taxes, as shown herein, is sufficient in law to supply a proper foundation for prescription. Giddens vs. Mobley, 37 Ann. 417.

At all events plaintiffs are estopped from urging want of possession in 1878, either in these defendants or their predecessors, by reason of

their judicial admission to the contrary. Their petition in this case, filed October 16, 1884, contains the following allegation :

"That about nine years ago the aforesaid defendants, well knowing that they had no title to the aforesaid lands, or that their pretended title was in all respects vicious and defective, wrongfully and in bad faith *entered upon and took possession of the above described lands, and have ever since illegally gathered for their own benefit, received, enjoyed and disposed of the fruits and revenues of said lands* belonging to your petitioners, and worth the sum of four hundred dollars per annum, making three thousand six hundred dollars for the rents, revenues, use and occupation of said lands during the past nine years, justly due and owing unto petitioners by defendants." (Italics are ours).

The allegation has reference to both the tracts of land now in suit, and it is palpably inconsistent with the contention that the tract of land now under discussion was not in the possession, illegal or otherwise, of the defendants prior to the year 1878.

## II.

In support of their tax title to the second tract of land in controversy, defendants rely upon a tax collector's deed, dated December 16, 1871, which recites in substance that the property had been assessed in the name of H. L. Handley, that it had been seized for taxes, of which notice had been given, that the seizure had been duly advertised, that the sale took place conformably to the advertisement, on the 30th of September, 1871, and that the property was then and there adjudicated to Leonard Edgcomb for the sum of $121.90, which was duly paid.

The authority of the tax collector was not disputed, but numerous irregularities in the assessment of the property, and in the manner of effecting the sale, are set up by plaintiffs as elements of nullity of the tax sale, evidenced by the deed which we have just described.

In this connection we must repeat that we are not trying the legality or binding validity of this sale, but our investigation must be restricted to the question of the good faith of the purchaser at the sale, and of the belief which he had that he was acquiring a just title.

The deed speaks for itself, and amply justifies the legal conclusion that it operated a transferable title of ownership in the purchaser, and hence that it was a just title.

That feature of the case is so absolutely identical with the questions involved in the case of Giddens vs. Mobley recently decided by this Court, and reported in 37 Ann., p. 417, that we feel justified in adopt-

ing the reasoning of that case, as our reasons for the disposition of that part of the present case.

We shall therefore content ourselves to refer to our discussion of that case and to the authorities which we quote therein, as amply sufficient to fairly and justly dispose of the points discussed by counsel on this branch of the case in hand.

Great stress is laid by plaintiffs on alleged illegalities and irregularities which characterized the assessment, the seizure and the sale of these lands at the tax sale relied on by the defendants. Among others they contend that the assessment was in the name of *II. L. Handley*, and not in the name of *H. L. Hundley*, who was the true owner; that the parish tax claimed of him was in excess of the limit imposed by law to the taxing power of the parish, and that the lands were not subdivided in lots for the purpose of sale as was required by the Constitution and the laws then in force.

The legal answer to these objections is that none of those defects or illegalities were stamped on the face of the tax collector's deed, which is valid in form and contains a detailed recital of a compliance with all the forms and other requirements of the laws then governing such sales.

As we said in the case of Giddens vs. Mobley, we can but repeat here: "A possessor cannot be deprived of the right of pleading prescription, because he might by inquiry and careful examination discover that his vendor had no title," or that the tax sale under which he claims as a basis of prescription was defective on account of some latent illegality or irregularity.

We now reach the question which was discussed on appeal only and on which the record is not satisfactory.

It involves the proposition that plaintiffs, who were minors when they acquired the rights of their mother, had not been of age ten years previous to the institution of this suit, and that as prescription does not run against minors, it had been suspended a sufficient time to defeat the plea as a means of defense.

That the minority of plaintiffs suspended prescription as long as it lasted, is a proposition which cannot be controverted. C. C. arts. 3522, 3544. The record shows that they were both minors in the year 1869; and their counsel contends that one of them reached the age of majority in 1875, and the other in 1879, only.

But on this point the record is absolutely silent. Hence we have no means of legally ascertaining the precise time at which they both reached their respective majority. It stands to reason that the point

is of vital importance to the final and just determination of the controversy, which hinges on the question of prescription.

On the face of the record, and under the law, as we have shown, the case is with the defendants on their plea of prescription, but the ends of justice compel us to remand the case in order to solve the question of the alleged suspension of prescription through and by means of the alleged minority of plaintiffs during a portion of the ten years necessary to sustain the plea; and for that reason only we must reopen the case and reverse the judgment appealed from.

It is therefore ordered that the judgment of the district court herein be reversed; and that the case be remanded to the lower court for trial exclusively on the question of the alleged prescription of ten years by reason of the minority of plaintiffs extending to a time less than ten years before the 16th of October, 1884; the true intent of the trial thus ordered being to legally ascertain the precise time at which the two plaintiffs herein reached their respective age of majority, either by the lapse of time or by legal emancipation.   Costs in both courts to abide the final determination of the cause.

---

### On Application for Rehearing.

MANNING, J.   Among the reasons urged by the defendants' counsel why a rehearing should be granted, is that the opinion does not pass upon his plea of prescription of two, three and five years, and if the plea of ten years' prescription should not be borne out by the evidence we have ordered to be taken, that he desires to avail himself of these shorter terms.   Those pleas were not passed on because the case was rested on the ten years' plea, but the defendants are not and will not be precluded from urging those pleas, if the longer term shall be found not to be sustained.

Rehearing refused.