577 So.2d 1094 (1991)
Paul F. O'BRIEN, Jr., et al.,
v.
ALCUS LANDS PARTNERSHIP TRUST, et al.
No. CA 89 2111.
Court of Appeal of Louisiana, First Circuit.
March 28, 1991.
*1095 Victor A. Sachse, III, Baton Rouge, for plaintiffs Paul F. O'Brien, Jr., Priscilla Alden O'Brien Mertz and Ernest O. O'Brien, appellees.
James M. Field, Baton Rouge, for defendant John C. Bonfiglio and Renate Bodensteiner Bonfiglio, et al. appellants.
R. Ryland Percy III, Gonzales, for defendants Robert R. Philippe, Sr., Viola Braud Philippe appellees.
Neal Harmon, Port Allen, for defendants Thomas E. Robertson and Marilyn Bergeron Robertson.
Dale M. Maas, Baton Rouge, for defendants Frank A. Messina and Curley Messina appellees.
Before LOTTINGER, SHORTESS and CARTER, JJ.
LOTTINGER, Judge.
This is an appeal by several defendants[1] from a judgment in a petitory action recognizing the plaintiffs as owners of the property in question by means of acquisitive prescription and ordering the clerk to erase those acts of sale purporting to transfer ownership of the property to the defendants. The plaintiffs have answered the appeal urging ownership by title in the event this court should find that the plaintiffs have not acquired the property by acquisitive prescription.
On June 25, 1985, Paul F. O'Brien, Jr, Paul F. O'Brien, III, Priscilla Alden O'Brien Mertz, and Ernest O. O'Brien (hereafter collectively "plaintiffs") filed this petitory action against the defendants seeking to be recognized as owners of the undivided 9/10 interest in the following described property:
Lots 1 and 2 (less portions sold by their predecessors to John Omar, C.O.B. 55, folio 328; Arthur Ashton, C.O.B. 55, folio 325; and Williams, C.O.B. 55, folio 324) *1096 and the SW/4 of the SW/4 of Section 10, Lot 5 of Section 9, the NW/4 of the NW/4 of Section 15, all in T9S, R4E, Ascension Parish, Louisiana.
The plaintiffs-appellees claim the property as heirs of Paul F. O'Brien and Clara D. O'Brien. This appeal relates only to that portion of Lot 5 in which the defendants-appellants claim an interest.
By deed dated December 1, 1945, Paul F. O'Brien, the plaintiffs' immediate predecessor in title, acquired an undivided one-half interest in this property from the heirs of Joseph Hebert. On December 8, 1945, Mr. O'Brien purported to acquire the remaining undivided one-half interest of the successors in title of John P. Salassi. Both of these acts of sale erroneously described the property as being located in the E ½ of the SW ¼. The property is actually located in the E ½ of the SE ¼ as reflected in the correction deeds recorded on July 5, 1956 and March 28, 1957.
The defendants' divergent line of ownership of this property manifested as a result of acts entered into by Joseph Hebert and the Salassis in March 1928. On March 2, 1928, Joseph Hebert and the Salassis sold timber from their undivided 9/10's interest in this property to De-Hass Eby Lumber Company (hereafter "De-Hass"). Three days later, Alice Salassi St. Amant sold her entire undivided 1/10 interest in this property to De-Hass. On December 20, 1931, De-Hass purported to sell the entirety of this disputed property to S.T. Alcus & Co., Ltd. Diversion Isles, Inc. (hereafter Diversion) purchased this property from S.T. Alcus & Co. on October 22, 1975. The property was divided by Diversion and sold to the defendants or their predecessors (hereafter defendants) during 1976 (less than 10 years prior to this suit). Upon purchasing these subdivided lots, the defendants continuously exercised acts of corporeal possession by constructing camps, wharfs, and et cetera.
On July 16, 1956, the plaintiffs' immediate predecessor granted rights of way to Ascension and Livingston Parish Police Juries for construction of the Diversion Canal. These rights of way were granted following the July 5, 1956 correction deed by the Heberts but prior to the March 28, 1957 correction deed by the Salassis. The construction of the Diversion Canal was completed in 1964. This canal crosses part of Lot 5.
The trial court found that the defendants were currently in possession of the property. Discrepancies in the property description in the various acts of sale occurring prior to the 1956 and 1957 corrections rendered it impossible for the trial court to determine which property was being conveyed. Therefore, the trial court found that the plaintiffs failed to trace their title back to the previous owners, the Salassis and the Heberts.
The plaintiffs and their predecessors in title paid the taxes on the property in question from 1929 to 1986. In addition, they granted rights of way to LP & L for the construction of a power line and to Ascension and Livingston Parish Police Juries for the construction of the Diversion Canal. The court found that plaintiffs proved that they had taken corporeal possession of the disputed property by granting servitudes to LP & L and the Parishes of Livingston and Ascension. The court concluded that these acts were sufficient to supply the foundation of ten year acquisitive prescription.
The trial court found that it would be impossible for the plaintiffs and their predecessors to have exercised possession over 9/10 of the land without exercising possession over the remaining 1/10 which was actually sold to De-Hass. Therefore, the trial court found that the plaintiffs were owners by acquisitive prescription of the entire disputed property. Furthermore, the trial court ordered that the Clerk of Court of Ascension Parish erase from the conveyance records those acts transferring property to the defendants to the extent that they purport to transfer all or part of the described property.

ASSIGNMENT OF ERROR
The defendants-appellants contend that the trial court erred in holding that the plaintiffs proved ownership of the property by acquisitive prescription.
*1097 There are four requisites for 10 year acquisitive prescription: (1) possession for ten years, (2) good faith, (3) just title, and (4) a thing susceptible of acquisition by prescription. La.Civ.Code art. 3475. Only two of these requirements are at issue in this case: just title and possession for 10 years.

JUST TITLE
Ordinarily, the title conferred by acquisitive prescription extends only to that property which has been actually possessed. However, when one possesses under just title, possession as to any part of the immovable constitutes constructive possession as to those parts under such title that have not been actually possessed. A title is just for purposes of acquisitive prescription when the deed is regular in form, is valid on its face, and would convey the property if executed by the owner. See, La.Civ.Code art. 3483.
The paper title relied upon by one seeking to establish a ten year prescription must sufficiently describe the property so as to transfer its ownership. One must be able to identify and locate the property from the description in the deed itself or from other evidence which appears in the public records. See, Pure Oil Company v. Skinner, 284 So.2d 608, 611 (La.App. 2d Cir.1973), rev'd on other grounds, 294 So.2d 797 (La.1974).
The disputed property is located in the E ½ of the SE ¼ of § 9, Township 9 South, Range 4 East, Ascension Parish, Louisiana. The 1945 deeds which purported to transfer the disputed property to the plaintiffs incorrectly described the property as being located in the E ½ of the SW ¼ of § 9. The Heberts executed a correction deed on July 5, 1956 for the undivided ½ interest that had been sold to the plaintiffs. The Salassis executed a correction deed for the sale made of the remaining undivided ½ interest on March 28, 1957.
Assuming that plaintiffs possessed the disputed property prior to the recordation of the two correction deeds, they did not possess under just title; therefore, they could not have acquired title by ten year acquisitive prescription prior to 1966. At the earliest, ten year prescription could not have commenced until the plaintiffs acquired just titles to the disputed property on July 5, 1956 and March 28, 1957, respectively. Smith v. King, 192 La. 346, 188 So. 25, 30 (1939); Bagby v. Clause, 251 So.2d 172, 179 (La.App. 1st Cir.), writ denied, 259 La. 773, 252 So.2d 669 (1971).
The combined acts of the Heberts and the Salassis purported to transfer all of Lot 5 to the plaintiffs' predecessors. There was no mention in these acts of the outstanding undivided 1/10 interest that had been sold to De-Hass. Therefore, in addition to acquiring just title to the undivided 9/10 interest owned by the Heberts and the Salassis, the plaintiffs acquired just title to the undivided 1/10 interest that was owned by De-Hass. See, Succession of Seals, 243 La. 1056, 150 So.2d 13 (1963).
The question to be decided is whether or not the plaintiffs have exercised sufficient possession pursuant to the corrected description to toll the commencing of ten year acquisitive prescription.

POSSESSION
A possessor must have corporeal possession of the immovable, or civil possession preceded by corporeal possession to acquire an immovable by prescription. La.Civ.Code art. 3476. Any person asserting ownership by acquisitive prescription must prove that someone corporeally possessed the property on their behalf. Corporeal possession is defined as "the exercise of physical acts of use, detention, or enjoyment over a thing." La.Civ.Code art. 3425. Once a person ceases to possess corporeally, his possession continues in the form of civil possession. See, La.Civ.Code art. 3476.
The degree of corporeal possession required in a particular case is governed by the nature of the land and the use to which the land is put. Liner v. Louisiana Land and Exploration Company, 319 So.2d 766 (La.1975). The evidence proves that the disputed property constitutes primarily swamp land which is useful for little more than timber cutting and perhaps *1098 hunting, fishing, and trapping. Whether or not the activities conducted by or on behalf of the plaintiffs constitute corporeal possession is a question of fact to be decided based on the circumstances of this particular case. Clifton v. Liner, 552 So.2d 407 (La.App. 1st Cir.1989).
The plaintiffs and their predecessors in title exercised the following acts of ownership: (1) 1928 sale of timber; (2) 1929 grants of right of way to LP & L; (3) 1956 grants of right of way to Ascension and Livingston Parishes; and (4) payment of taxes from 1929 to 1986. The assessment and payment of taxes and the granting of servitudes without evidence of physical possession by the grantee is simply a manifestation of the possessors intent to possess as owner. Such actions do not satisfy the requisite amount of corporeal possession required to support the plea of prescription. These acts constitute civil possession rather than corporeal possession. Blanchard v. Norman-Breaux Lumber Co., 220 La. 633, 57 So.2d 211 (1952).
For purposes of determining whether the plaintiffs have acquired ownership by ten year prescription, we must look first to those acts of corporeal possession that took place after the plaintiffs acquired just title to the property in 1956 and 1957. Since the plaintiffs are seeking to prove acquisitive prescription through the acts of Ascension and Livingston Parishes, they must show (1) that servitudes were granted and (2) that they, as grantees, exercised corporeal possession of the property. See, McPherson v. Roy, 390 So.2d 543 (La.App. 3d Cir.1980), writ denied, 396 So.2d 910 (La. 1981).
The plaintiffs have shown that their predecessors granted rights of way to the parishes of Ascension and Livingston in 1956 following the recordation of the first correction deed. The payment of taxes and the granting of these servitudes would be sufficient to commence the running of ten year prescription provided proof of the grantees' physical acts on the property has been shown. The plaintiffs contend that the parishes of Ascension and Livingston commenced the construction of the Amite River Diversion Canal following the granting of the 1956 servitude. The right-ofway for this canal was cleared, and the canal was ultimately constructed over part of the disputed property.
The defendants contend that although plaintiffs presented evidence purporting to establish that the parishes of Livingston and Ascension were precarious possessors of the property, they failed to present evidence that these parties undertook acts of corporeal possession. This court agrees that the plaintiffs failed to set forth the precise time frame in which each specific act was performed by the grantees in constructing the canal. However, the undisputed evidence establishes that (1) the canal was in fact constructed across the disputed property, (2) construction of the canal was completed in 1964, and (3) the canal remains on the property today. Based on the nature of the property involved, the performance of construction acts by the plaintiffs' grantees was sufficient to constitute corporeal possession over that portion of the disputed property. Since a portion of the disputed tract was actually possessed on behalf of the plaintiffs, the plaintiffs are deemed to have possessed the remainder of the property under the theory of constructive possession. La.Civ.Code art. 3426.
Under the law, these grants of servitude, followed by actual operations pursuant to the grants, were sufficient to initiate the running of the ten year acquisitive prescription. Zylks v. Kaempfer, 189 La. 609, 180 So. 425 (1938). Even though the evidence fails to establish the exact point at which construction of the canal began, there is evidence in the record to support the fact that a portion of the canal was constructed over the disputed property during the interval between 1956 and 1964. Absent any evidence of adverse possession within the 10 years following completion of the canal, we find that the trial court did not abuse its discretion in finding that the plaintiffs were owners by ten year acquisitive prescription.
Therefore, for the above and foregoing reasons the judgment of the trial court is *1099 affirmed at the defendants-appellants' costs.
AFFIRMED.
NOTES
[1] The defendants in this matter are:

Edwin R. Feig, Mary M. Feig Bordelon, Francis M. Feig, John L. Feig, John C. Bonfiglio, Renate B. Bonfiglio, Wilfred J. Matherne, Vivian M. Matherne, Gilbert J. Matherne, Sr., Elizabeth W. Matherne, Thomas E. Robertson, Marilyn B. Robertson, Mary Anne D. Schexnayder, Sherry Schexnayder, Angela Schexnayder, Brandon Schexnayder, Reynaud A. Berthelot, Evelyn V. Berthelot, Warren M. Harris, Josephine G. Harris, Jerry W. Broussard, Carolyn O. Broussard, Deryl M. Broussard, Janice W. Broussard, Robert R. Aydell, Edna R. Aydell, Gary L. Aydell, Gwen C. Aydell and Ann M. Williams.